Court. My name is Eric Koenig, and I represent the plaintiff appellant Mercedes Carvajal. Your Honors, the issue here today is the interpretation of the party's stipulation for partial dismissal of all claims and whether or not there was an attorney fee waiver. I believe the issue really is the context of the entire agreement. Well, shouldn't we look at the agreement first and then look at the context later? No, you look at it all together. You read it all together. If the agreement is clear, why don't we have to look at the context? Because the agreement is not clear. You have to look at the first five paragraphs of the agreement, which in itself talks about the dismissal of four claims and the release of parties after talking about the dismissal. The dismissal of those claims, the bearing of attorney's fees and costs relating to those claims, and then the release of the parties relating to those claims. It doesn't talk about, in those five paragraphs, doesn't talk about anything about the remaining claims that were reserved for appeal. And then the last two paragraphs of the stipulation then discusses the remaining four claims. And the last paragraph specifically talks about the appeal. It's silent as to attorney's fees in the district court after the appeal, and then attorney's fees in the district court relating to those four claims. It's, as admittedly, inarticulately drafted, and that's the unfortunate thing about these cases that we're trial lawyers. We're not transactional lawyers. We're not the best. You drafted it, though. I didn't personally draft it. I can pass the blame on to my co-counsel on that. You talk with ambiguity, aren't you? It is ambiguous, and in a way, it just doesn't make sense at all. Let me get at it this way. This is what struck me. At the time you entered into this stipulation, with respect to the 5th, 6th, 7th, and 8th causes of action which you were going to, you reserved your right to appeal to the Ninth Circuit. At that very time, your client had no rights to attorney's fees. No, she had lost in the district court. Right. So how could she waive them? Exactly. A waiver is intentional relinquishment of a known right. She had no known right at that point to attorney's fees on those claims. And I wish I had thought of that, Your Honor, but it's a nailing it right on the head, Your Honor. There was nothing to waive at that time. She couldn't have waived attorney's fees in the district court because she didn't win. So regardless of what the agreement says, she had nothing to waive. That's correct, Your Honor. She didn't have anything to waive. She had lost already. She only got rights to attorney's fees once the Ninth Circuit ruled in her favor and backed down. That's correct. I wish you had written the brief, Your Honor. I think you're entirely correct. I missed that point completely, and I admit that. But the bottom line is that everything that happened in the district court went against her. So once she then decided to proceed, she decided to get rid of the claims that were not viable in her eyes and go and appeal the claims that were viable. And when she did appeal those, she won on appeal. And then what happens at that point? It doesn't make sense that she would gratuitously waive everything that she had done relating to those four claims up to that point. She was intending on going on appeal, and she was hoping to win on appeal. And if she won on appeal, does that mean her attorneys remain unpaid or that she doesn't get reimbursed? Of course not. What it means is it goes back down to the district court with instructions, which in this case was instructions in her favor by the Ninth Circuit that she won. And the government then agreed to pay what the amount of the interest that she should receive would be and pay her. And so everything that she was entitled to and expected that would happen happened. Again, it just doesn't make any sense whatsoever for her to go and to agree that I'm going to appeal this, and if I win I'm out of luck about everything I did up to that point in the district court. So at this point, Your Honor, I think that's pretty clear and succinct. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Carla Ford. I'm Assistant U.S. Attorney representing the appellees in this appeal. To answer Judge Wardlaw's question about the waiver, how could Ms. Carvajal waive, which she did not have a right to at that time of the making of the agreement, parties always, all the time I should say, waive their right to pursue claims whether or not they are in existence. That's not the language in this stipulation. It is not, but it is implied in the sense that once someone enters into an agreement, that they mean the words that they're signing. Why would they do that? At the time that they entered into the stipulation, she was not the prevailing party. She had no right to attorney's fees under the Equal Access to Justice Act. She had no idea what the result would be, but I'm sure that had it been thought about and given any attention in the stipulation, she would not want to relinquish the prevailing party attorney's fees. It just would not be something you would do if you thought about it. But she was a prevailing party as to the rest of the parties to the action and to the stipulation, Your Honor. There were other defendants who were dismissed pursuant to this stipulated dismissal. And as to those individuals, there had been a ruling against them in the district court. And that ruling, had the case proceeded, may have entitled Ms. Carvajal to attorney's fees against those individuals. Ms. Carvajal's counsel and she and her counsel determined that they wanted to dismiss the claims against those individuals and proceed only with the claims against the United States. Now, the way the stipulated dismissal was drafted, as Judge Cuddehy observed, is that paragraph 3 says without equivocation that each party is to bear their costs and their attorney's fees. Then in paragraph 7, that paragraph, the meaning of paragraph 3 is bolstered by the fact that the language says that the plaintiff and the United States reserve the issues of costs and attorney's fees on appeal. Now, if what Ms. Carvajal meant to say was that it had to do with the claims as opposed to the parties, then Ms. Carvajal's attorneys did write this document and submit it to the government, and they had opportunity to make that distinction, but they did not. Presenting the language to the government, the government received the document, read it, agreed with it, signed it, returned it to Ms. Carvajal's attorneys, who had a number of days before they then signed it and filed it, and it became effective and bound all parties. So the clear intent of the contract is there. There's no reason to pursue the idea of ambiguity. And again, as Judge Cuddehy points out, any ambiguities in the document are construed against Ms. Carvajal because it was her lawyers who drafted the document. But if you want to go into the argument that counsel makes about how it's crazy, that it's just absurd that anybody would ever give away their right to attorney's fees, well, it's not so crazy. People waive their right to attorney's fees all the time in the name of settling a case for whatever reasons that motivate them. It could be a narrowed- Excuse me? As to the claims you're asserting waiver, there wasn't a settlement. They weren't pursuing those claims. They reserved the right to appeal those claims. The language in the document says that they were reserving the right to appeal the claims on appeal as to attorney's fees and to costs. The language in paragraph 3 says that everybody agrees that they're going to bear their costs and attorney's fees in district court. And there's no confusion about that. And to the extent that there is any confusion, Judge Wardlaw, I would submit that that is something that Ms. Carvajal herself is going to have to bear. With respect to the absurdity argument, an unwise decision in entering into an agreement, such as waiving your attorney's fees, though it may be unwise, is not an absurdity argument, because people do waive their right to pursue attorney's fees in the present and in the future. So what I would submit, Your Honors, is that what Ms. Carvajal is asking this Court to do is to rewrite the stipulated dismissal. Under California law, there's no reason to read any absurdity into a document if it's clear on its face. And what if it's not clear on its face? As if it's not clear on its face, as Mr. Honig would have this Court believe, then again, whatever absurdity, I'm sorry, whatever ambiguity that exists is construed against her. Do you have any cases, I mean, you know, I know that's true in insurance contract situations and other, you know, other contractual situations, but I've never really heard that argument made with a stipulation in court where we can, you know, actually have legal analysis of this. You know, we can sort of determine from the language what the intent of the parties was or was not, or maybe they didn't, maybe there wasn't even a mutual intent manifested on that issue in this agreement. Well, let me say two things to that. First, when you're talking about what's... Well, my question is do you have any cases? Oh, do I have any cases? Yes. If it would apply. I mean, would you just apply general contract law? It is general contract law, but general contract law in California cases has been applied to a debtor action in bankruptcy. It's been applied in landlord-tenant and commercial contract scenarios. And to that end, I would refer the court to Miller v. United States, which is at 363, Fed Third 999. That was a Chapter 11 debtor case in which the debtor was seeking to avoid having to pay interest on a tax owed to the IRS. In that case, the debtor had written the plan that was adopted by the bankruptcy court, and in this action appealed to the Ninth Circuit. The Ninth Circuit said, well, we're not going to construe that in we're going to construe this language that created an ambiguity with the way the statute was read. And I apologize for not knowing exactly what the statute is. But with the way the statute is read and with what was in the plan. And the court determined that since the debtor had written the plan, they were going to construe that plan against the debtor because it went against the debtor. Can I come back to the contract itself? I understand the abstract law. Yes. At least medium well. I'm on, well, I guess I'm on ER 37 or 38, 39. I mean, this is, I'm just looking at the contract, right, the stipulation. So it begins on ER 37. Yes. And the language that you're attaching the importance to is, of course, paragraph 3. It's a one-sentence paragraph at the bottom of page 37 on the ER, page 1 of the stipulation. It says, each party shall bear its own costs and attorney's fees in the district court. The preceding paragraph, again, a one-sentence paragraph, says the parties have agreed to the dismissal with prejudice against all remaining defendants in 1, 2, 3, 1st, 2nd, 3rd, 4th causes of action. What if this contract had been written with exactly the same words, but the number 3 at the beginning of the third paragraph had been omitted, and instead of there being two paragraphs, there's now a single paragraph? Would that change the meaning of the contract for you? It might. Because? Because it would not specifically address attorney's fees and costs. And certainly a waiver of attorney's fees and costs has to be explicit. No, no, I'm sorry. No, I'm not taking out the text. I'm just taking out the number 3. Oh, I see. And I'm combining the two sentences in a single paragraph. Certainly an argument could be made that it pertains to those claims. Yes, Your Honor. Yeah, yeah, right. So, see, that's why I came up with the notion that paragraph 3 only related to paragraph 2, because there wasn't any right to costs or attorney's fees to any other claims other than the ones that had been dismissed in the district court. And that's why you would say, I mean, we don't award costs and attorney's fees until there's been a final disposition of the claims. And so those claims are dismissed with prejudice. That's final. So we have to deal with this issue, costs and attorney's fees. Yes, I understand, except that they are separate, and 2 does not necessarily paragraph 3 is not necessarily exclusive to paragraph 2, because it's a freestanding paragraph. And certainly in construction, contract construction, the entire document needs to be read as a whole. Right, but this doesn't make any sense to me, because there's no costs and attorney's fees that go to the 5th, 6th, 7th, and 8th. Yeah, and you know how lawyers are. They put numbers in everywhere. They'll, you know, if they had three kids, they'll say kid number 1, kid number 2. I'm tempted to eliminate that 3 in terms of reading this. And I'm not changing the words at all. I'm just sort of combining those two sentences a little tighter. But I'm not changing the sequence or anything else. I understand that, Your Honor. But what's important to the drafting of a document is that it be precise and that a waiver be particularized. Mr. Honig and his co-counsel certainly could have delineated where the application of the attorney's fees and cost paragraph applied. They certainly knew how to parse it out by claims as they did in paragraph 2 and in paragraph 6. Is it possible in this lawsuit that the government could have obtained attorney's fees? No, the government cannot obtain attorney's fees, but the government was not the only party to this stipulated dismissal. No, but as to the claims that were appealed, if the government had been the prevailing party, would it be entitled to fees? No. Okay. Because sometimes the government does get fees, but in this case, there were no fees available to the government, even if the court had found that the plaintiff's claims were frivolous. In my experience, Your Honor, the government does not seek attorney's fees. No, I'm not asking whether they seek. I'm asking whether they might be statutorily entitled if the plaintiff's claims had been found to be frivolous. I know there's this asymmetry in 1983 attorney's fees, and I just don't know the underlying attorney's fees statute with which you were dealing. The EJIS statute, which I believe was the one at issue here, does not provide for the government being allowed to recover attorney's fees. Okay. That's the answer then. Okay. Does it? I mean, does it? Okay. Yeah. So D-1A, a court shall award to a prevailing party other than the United States fees and other expenses. But it is entitled to costs if it prevails. Yes, Your Honor. And the government would have been entitled to costs. So the government is waiving its costs. And in the district court, yes, that's right, Your Honor. We waived our costs. And we agreed with this language when it was proffered to us by Ms. Carvajal's counsel. We signed the document. They filed it. And we had a meeting of the minds from our point of view, because there were no negotiations. There's law in California on unilateral. And there is no meeting of the minds if it's only one mind that has one view and the other mind has the other. And that's when California courts will look to extrinsic evidence. And they're pretty liberal about that, unlike other states. Except that we didn't draft the language, Your Honor. I know, but I don't think that's the only rule that applies. It's not? Let me ask you this. At what point did you come into this case? Were you part of this stipulation? Yes, I was. I understand you didn't draft it. So you were there. I was there. What did you think, if you can reconstruct, whether you had waived costs in the event you had prevailed in the claims that it still survived? Did you waive those costs? What was in your head? I'm not asking what your construction is now. I'm asking what was in your head. When I received this document, and of course this is not in the record, but when I received this document, I was pleased with the provision. And that's why I signed the agreement with the advice and approval of my supervisors. I understand that. But that's not quite my question. You might say I can't remember. You might say I can't, you know, whatever. I'm not asking a particular answer. But I am asking if you do remember, what did you think this third paragraph meant if, as to the reserved claims, the ones that were being appealed, that if you had finally won on those, could you have gotten costs if you'd won on those claims? Yes. Oh, well, that's interesting. Because that's exactly the opposite, meaning then you're attaching to it in this litigation. Well, costs on appeal. I was agreeing, and the government was agreeing, that we were waiving costs in the district court. Oh, I see. So you went on appeal. It goes back down again. Oh, I see. So if you went on appeal, it's never going to come back down to the district court. Correct. Okay. I got it. Okay. At this point, Your Honor, I think I'm out of time, but I would like to conclude by stating that the way the contract came into being and the provisions that are contained in it are clear from the government's point of view. But to the extent any ambiguity was created, it was created by Ms. Carvajal. And to that end, it's construed against Ms. Carvajal. What she'd like you to do is rewrite this agreement so that she could get attorney's fees in district court now that she knows she could get them. And what we submit is that there is no mechanism under California contract law that permits this court to do so. And on that, we submit. All right. Thank you, counsel. Thank you. Your Honors, I'd like to address Judge Fletcher's question to Ms. Ford about what was in her mind when this was drafted. You're going to tell me what was in her mind? Well, actually, she said it herself on the transcript at the hearing where the court raised it. It's ER 101, Your Honor, starting on page ‑‑ sorry. ER 101 starting at line 4. The court. Okay. Did the government intend to resolve the issue of fees out of district court by way of a stipulation? Answer, Ms. Ford. Well, the government at the time we took the position that I guess it was a conflated idea that the issue of attorney's fees was going to be dealt with on appeal and that the case would return to the district court based on that ruling. I know her answer is not that clear, but what she said essentially was it was a conflated idea that the attorney's fees were going to be dealt with first on the appellate level and then back in the district court. She didn't specifically say, no, it was an intent from that point on that everyone would waive, Mr. Carvajal would waive all attorney's fees in the district court. What she was saying was it was this conflated idea that would go up and then it would come back down and then we'd deal with the issues, the attorney fee issue in the district court based on what happens in the Ninth Circuit. And what happens in the Ninth Circuit ‑‑ Well, you know what, I read her words, and I don't want to hear a whole lot more from you as to what those words mean. Sure. Okay. They can be interpreted whatever the court believes they should be. I was present there also, Your Honor, and she had every opportunity on this transcript. You can look at it. I'm not trying to cut you off, and I understand your point, but at some point I just come back to the words that she said and not the words that you say she said. That's correct, Your Honor. Now, as far as Judge Wardlaw's question about the attorney fees that the government or Ms. Carvel might have been able to be entitled to up to that point, if she had continued her claims against the individual defendants, she could have gotten fees against the City of Los Angeles but not the individual defendants on the claims that she prevailed on. But that's the whole point of this number three there is that she dismissed her claims, the one through four that involved the City of Los Angeles, and then bore her own attorney's fees and costs relating to the dismissed claims, because she would have been entitled to claims against the city had she continued. But she was not entitled to any attorney's fees against the United States because she had lost. So there had to be a reference to bearing costs and attorney's fees for the fees that she could have possibly received had she continued the case. She was giving that up as to the claims that she still had viable. The other four claims she no longer had viable, so there was nothing to give up. There was no claims that she had at that point, as Judge Wardlaw had raised earlier. Again, there was no negotiation in this case. There was, as the government admitted in its answering brief, there was nothing discussed as far as waiving any attorney's fees. There was no reason to give up any attorney's fees as far as the claims against the United States because we had already lost. And so what's to negotiate? Are we lost? Okay, we're going to go appeal this, but we're going to give up attorney's fees in case we win. Again, it doesn't make any sense at all. And so to go back, I'm a little slow. So what attorney's fees is your client giving up by Paragraph 3? Because obviously you're not entitled to them against the government. No, against the City of Los Angeles. They did prevail on the motion to dismiss by the City of Los Angeles, and the court denied the motion as to a portion of her claims in the first four causes of action. And that would have been 1983 claims? 1983, exactly. And she could have continued, but the judgment was that to go ahead and dismiss those claims and proceed against the four that were voluntarily dismissed, which we believe were stronger claims. So she was giving up attorney's fees specifically for those claims, yes. I have nothing else. The court has no other questions. Any more questions? Thank you, Your Honor. Okay, thank you. Carvajal v. United States is submitted. Next is United States.
judges: Cudahy, Wardlaw, Fletcher W.